GEORGE W. STANTON *vs.* SENTINEL PRINTING COMPANY.

Worcester.   January 4, 1949. — March 3, 1949.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Libel and Slander.*

Publication in a newspaper in a city of a letter to its editor in midwinter intended and understood to refer to the mayor, naming the street upon which he lived and on which he had a driveway and yard and stating, "in regard to the snow removal from hydrants and driveways, it appears to me that your only solution is to use a shovel and a good strong back.  If you can't do the work yourself, you can always hire someone to do it.  If that doesn't suit you, I would suggest that you get yourself elected mayor and threaten to fire the commissioner of public works, then you'll see how easy it is to have your street, driveway and even your yard cleared of all this snow," might be found to injure the mayor's reputation in the community and to expose him to hatred, ridicule, and contempt, and to be libellous.

TORT.   Writ in the Superior Court dated February 7, 1948.

A demurrer was heard and sustained by *Donnelly, J.*

*E. O. Proctor,* for the plaintiff.

*H. G. Bowen,* for the defendant.

WILKINS, J.  The plaintiff appeals from an order sustaining a demurrer to his declaration in tort for libel against the publisher of a newspaper in Fitchburg, which was based upon the publication on January 28, 1948, of the following letter: "One Way Out.  To the Editor of the Sentinel: Dear Miss Vickery, in regard to the snow removal from hydrants and driveways, it appears to me that your only solution is to use a shovel and a good strong back. If you can't do the work yourself, you can always hire someone to do it.  If that doesn't suit you, I would suggest that you get yourself elected mayor and threaten to fire the commissioner of public works, then you'll see how easy it is to have your street, driveway and even your yard

cleared of all this snow. Someone who does live near Cedar Street."

The declaration alleges that the plaintiff is mayor of the city of Fitchburg and resides on Cedar Street, where he has a driveway and a yard; that the description was intended to refer to him and was so recognized and understood; that it indicated that he, as mayor, had the street on which he resided, as well as his own private driveway and yard, cleared of snow by the employees and with the equipment of the city; that he procured this to be done by threatening to discharge the "commission of public works" of the city; and that the publication held him out to ridicule and contempt in respect of his personal and official character, reputation, and conduct in the opinion of a great number of readers of the "Fitchburg Sentinel" and other persons and the public in general.

A demurrer to a declaration for libel cannot be sustained unless the words cannot be reasonably understood in a defamatory sense (*Twombly* v. *Monroe*, 136 Mass. 464, 469), that is to say, unless they are incapable of a defamatory meaning. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34. The test is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community. *Peck* v. *Wakefield Item Co.* 280 Mass. 451, 454. *Streeter* v. *Eldridge*, 311 Mass. 180, 182. A publication is defamatory when it tends to injure one's reputation in the community and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one's business or office not being essential. *Fahy* v. *Melrose Free Press Inc.* 298 Mass. 267, 269. *Themo* v. *New England Newspaper Publishing Co.* 306 Mass. 54. *Goss* v. *Needham Co-operative Bank*, 312 Mass. 309.

The defendant rightly does not contend that the publication by its reference to the mayor and to Cedar Street, Fitchburg, where he lives, did not sufficiently point out the plaintiff. See *Brown* v. *Journal Newspaper Co.* 219 Mass. 486. The defendant, however, does argue that the

mayor was entitled to have his street, driveway, and yard cleared of snow so that he might perform his public duties, and that the statement is incapable of a defamatory meaning. But whatever might be thought of an imputation that the mayor used the power of his office in the midwinter of 1948 to procure the clearing of his street and driveway of "all this snow," it could not be ruled as matter of law that the publication of such a statement as to his private yard could not reasonably be understood in a defamatory sense or would not tend to discredit him in the minds of a considerable number of readers who believed it. The jury could find that readers might understand the publication to depict the plaintiff as a selfish public servant who would coerce official subordinates to give priority to his private affairs in the use of city equipment and labor at a time when his constituents were relatively snowbound and their fire risks increased by uncleared hydrants, and so to injure his reputation and subject him to hatred, ridicule, and contempt. There was error in sustaining the demurrer.

*Order sustaining demurrer reversed.*
*Demurrer overruled.*